**Thomas P. Smith, Jr.**
**Gerald Gross**
**Jack Kaufman**
**James K. Hanson**
**SECURITIES AND EXCHANGE COMMISSION**
New York Regional Office
100 Pearl Street
New York, New York 10004
(212) 336-0106 (Kaufman)
Email: Kaufmanj@sec.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>                Plaintiff,<br><br>-- against --<br><br>**GABRIEL EDELMAN, CREATIVE ADVANCEMENT LLC, and EDELMAN BLOCKCHAIN ADVISORS LLC,**<br><br>                Defendants. | 22 Civ. _____ ( )<br><br>ECF Case<br><br><u>**COMPLAINT**</u><br><u>**AND JURY DEMAND**</u> |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendants Gabriel Edelman ("Edelman"), Creative Advancement LLC ("Creative"), and Edelman Blockchain Advisors LLC ("Edelman Blockchain") (collectively, "Defendants") alleges as follows:

### SUMMARY OF THE ALLEGATIONS

1. From February 17, 2017 through May 2021, Edelman and his two entities, Creative and Edelman Blockchain, fraudulently offered and sold securities, using false and misleading statements, to at least four investors, raising from them a total of approximately $4,390,000.

2. Defendants falsely told investors that their funds would be invested in digital assets that, Defendants claimed, they could obtain at a discount. However, Defendants did not intend to carry through on their promises and, in fact, invested only a small portion of investor funds in digital assets.

3. Defendants used a significant portion of the remaining investor funds for Edelman's own personal benefit—to pay Defendants' credit card bills and to pay significant amounts to Edelman's family members—and, in Ponzi-like fashion, to make early repayments to investors to encourage their ever-larger investments with Defendants. Edelman did not disclose to the investors that Defendants would use, or were using, their funds for any such personal expenses or to repay other investors.

## VIOLATIONS

4. By engaging in the conduct set forth in this Complaint, Defendants committed securities fraud in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

5. Unless Defendants are permanently restrained and enjoined, they will continue to engage in the acts, practices, and courses of business set forth in this Complaint, and in acts, practices, and courses of business of similar type and object.

## NATURE OF THE PROCEEDING AND RELIEF SOUGHT

6. The Commission brings this action pursuant to the authority conferred upon it by Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections 21(d)(1) and 21(d)(5) of the Exchange Act [15 U.S.C. §§ 78u(d)(1) and 78u(d)(5)].

7. The Commission seeks a final judgment: (a) permanently restraining and enjoining Defendants from engaging in the acts, practices, and courses of business alleged herein; (b) ordering the Defendants to disgorge with prejudgment interest all ill-gotten gains from the conduct alleged in this Complaint pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)], and Sections 6501(a)(1) and (a)(3) of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, to be codified at 15 U.S.C. §§ 78u(d)(3) and 78u(d)(7); and (c) ordering Defendants to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)].

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa]. Defendants, directly or indirectly, made use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or of the mails, in connection with the transactions, acts, practices, and courses of business alleged herein.

9. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Among other things, Defendants, from within the district, solicited investors and offered and sold securities to investors. Edelman resided in the district during the offer and sale of securities to investors.

## DEFENDANTS

10. **Creative** is a Delaware limited liability corporation that Edelman established in October 2020, with its principal place of business in New York, New York. It is solely controlled by Edelman.

3

11.     **Edelman Blockchain** is a Delaware limited liability corporation that Edelman established in October 2020 with its principal place of business in New York, New York. It is solely controlled by Edelman.

12.     **Edelman** is presently a resident of Spain, where he has resided since 2020. During his fraudulent conduct alleged herein, Edelman resided in New York, New York and was the principal of Creative and Edelman Blockchain. Edelman was a registered representative associated with a registered broker-dealer located in New York, New York from 2010 to 2019.

## FACTS

**A.     Defendants' Fraudulent Offering**

13.     Beginning in February 2017, through May 2021, Edelman solicited investment contracts in purported digital asset businesses from at least four persons he had known while working as a registered representative (the "Investors").

14.     The investment contracts offered and sold by Edelman were securities. In or about August 2018, Edelman provided at least one Investor with a written agreement ("Agreement") stating that the Investor's funds would be invested in WAX tokens. In the Agreement, Edelman represented that Edelman Blockchain was acting as an "umbrella group" for a number of Investors, which would allow the Investors to receive a 15% discount on the price of the WAX tokens. The Agreement further provided that the Investor grants Edelman Blockchain "full discretion on custody, timing of entry and exit from this investment." The Agreement recites that the Investor is an "accredited investor", and that "upon exit, recipient will be promptly notified of availability of funds to withdraw."

15.     The Investors, all United States residents, were relatively unknowledgeable regarding digital assets, and three of them were elderly.

16. In order to encourage and obtain additional large investments from two Investors, Edelman returned to them within a few months their initial investments with a significant profit—falsely indicating a positive return on their initial digital asset investments.

17. For example, one Investor initially invested $50,000. Edelman returned $75,000 within a few months, and the Investor subsequently invested an additional $600,000. Edelman then returned $720,000 a few months later. After that, the Investor invested $1,000,000–based on purported past performance and Edelman's promise that the Investor would receive a 15% return. Thereafter, Edelman did not return any funds to that Investor.

18. Early in 2019, Edelman solicited another Investor about a cryptocurrency opportunity. The Investor gave Edelman $25,000 by wire to Creative Advancement. Thereafter, the Investor received back about $35,000. The Investor made a second investment with Edelman a few months later for about $150,000 and received approximately $225,000 in return a couple of months later. The Investor then made an investment of about $400,000 with Edelman, this time wired to Edelman Blockchain. Edelman falsely told the Investor the money would be invested in a cryptocurrency that he had acquired at a discount from the market rate. The Investor never received any returns from his $400,000 investment.

19. Edelman told another Investor that his investment in crypto was similar to investing in stocks, and that the goal was long-term price appreciation where he could sell and make a profit after holding for a period of time. This Investor also received payments that, he believed, were returns on early investments, prompting him to make subsequent, larger investments that did not result in returns.

20. In general, Edelman falsely led the Investors to believe that: (i) Defendants would use all Investor funds to invest in digital assets; and (ii) the investments were generating positive

returns as evidenced by the returns he provided to them.  Edelman fraudulently failed to tell Investors that he did not intend to invest their funds in digital assets but, rather, that he intended to use much of Investor funds to pay his personal expenses.

21. Between February 17, 2017 and May 5, 2021, Edelman raised a total of $4,390,000 from the Investors, while refunding them approximately $900,000.

22. Later, however, after the Investors asked for the return of their money, Edelman refused.  He first put them off, claiming that his wife was sick and in the hospital, or that he was preparing to make payments by setting up a digital repayment system. Eventually, Edelman refused to provide Investors any requested redemptions.

23. Defendants' representations to the Investors were materially false and misleading. Contrary to their promises, Defendants did not use the vast majority of Investor funds to invest in digital assets.  Of the $4,390,000 of funds that Defendants received from the Investors, Edelman used, at most, $447,300 in connection with digital assets. He used at least $1.5 million for personal, non-business related purposes—including at least $886,144 in personal credit card payments, $444,722 in payments for the benefit of Edelman family members, $148,540 transferred directly to another family member, $88,731 in private school tuition, and additional amounts to pay other personal expenses, such as groceries, restaurants, parking and airline tickets. In Ponzi-like fashion, Edelman used another $927,000 to pay some Investors an initial return using phantom profits to encourage their ever larger investments.

24. Contrary to his promises to the Investors, and as Edelman knew or recklessly disregarded at the time, Edelman had no ability to purchase digital assets at a discount to market prices.

25. Furthermore, Defendants did not generate the profits they claimed to Investors.

To the contrary, as described above, Defendants simply misappropriated Investor funds for Edelman's personal use, or used them to create the false appearance of digital investment returns.

26. Edelman knew or recklessly disregarded that his statements to the Investors were false and/or misleading because, at the same time he made the statements, Edelman was not investing the vast majority of Investor funds in digital assets but, rather, was either using earlier Investor funds to pay later investors, or transferring the Investors' funds to his personal accounts to pay credit card bills, and transferring their funds to Edelman family members.

27. When the Investors purchased their investments, on Edelman's instructions, they wired the money to banks accounts in the name of Creative and Edelman Blockchain. Edelman falsely and misleadingly described those entities to the Investors as "umbrella groups" that would hold and invest their funds. Those accounts were controlled solely by Edelman, who used a significant portion of those funds for his personal benefit.

28. Since taking up residence in Spain in 2020, Edelman has continued to use the Creative bank account for apparent personal expenses such as hotel bills, restaurants and travel within Spain, and trips to Majorca.

## FIRST CLAIM FOR RELIEF
### Violations of Section 17(a) of the Securities Act

29. The Commission repeats, realleges, and incorporates by reference paragraphs 1 through 28, as though fully set forth herein.

30. Defendants, by engaging in the conduct described above, directly or indirectly, in the offer or sale of investment contracts, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails:

    a. Knowingly or recklessly employed devices, schemes, or artifices to defraud;

    b. Knowingly, recklessly or negligently obtained money or property by means of untrue statements of material fact or omissions to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c. Knowingly, recklessly, or negligently engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon the purchasers of securities.

31. By virtue of the foregoing, Defendants violated, and unless restrained and enjoined will continue to violate, Sections 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)].

**SECOND CLAIM FOR RELIEF**
**Violations of Section 10(b) of the Exchange Act and Rule 10b-5**

32. The Commission repeats, realleges, and incorporates by reference paragraphs 1 through 28 as though fully set forth herein.

33. By virtue of the foregoing, Defendants, directly or indirectly, by the use of the means and instrumentalities of interstate commerce or of the mails, in connection with the actual or intended purchase or sale of investment contracts, knowingly or recklessly:

    a. Employed devices, schemes, or artifices to defraud;

    b. Made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

    c. Engaged in acts, practices, and courses of business which operate or would operate as a fraud or deceit.

34. By virtue of the foregoing, Defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5] promulgated thereunder.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court grant the following relief:

**I.**

A Final Judgment permanently restraining and enjoining Defendants, their agents, servants, employees and attorneys and other persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise from violating Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**II.**

A Final Judgment directing the Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

**III.**

A Final Judgment ordering the Defendants to disgorge with prejudgment interest all ill-gotten gains from the conduct alleged in this Complaint pursuant to Section 21(d)(5) of the Exchange Act, 15 U.S.C. § 78u(d)(5), and Sections 6501(a)(1) and (a)(3) of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, to be codified at 15 U.S.C. §§ 78u(d)(3) and (d)(7); and

### IV.

Such other and further relief as this Court deems appropriate and necessary for the benefit of investors.

### JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.

Dated: New York, New York
September 15, 2022

SECURITIES AND EXCHANGE COMMISSION

By: /s/ Thomas P. Smith, Jr.
    Thomas P. Smith, Jr.
    Gerald Gross
    Jack Kaufman
    James K. Hanson
    100 Pearl Street
    New York, New York 10004
    (212) 336-0106 (Kaufman)
    Email: Kaufmanj@sec.gov
    Attorneys for Plaintiff